[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11398

Non-Argument Calendar

_____

D'ERICA THOMAS,

TA'NIYAH RELIFORD,

MINOR CHILD, JR, by his next friend and natural guardian Fonzel
Reliford, as the child of Dietri Nakee Reliford, deceased,

FONZEL RELIFORD, administrator of the estate of Dietri Nakee
Reliford, deceased,

                                        Plaintiff-Appellants,

versus

CITY OF AMERICUS, GA,

                                        Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:21-cv-00107-LAG

————————————

Before NEWSOM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

The plaintiffs appeal the district court's dismissal of their claims under 42 U.S.C. section 1983 and Georgia tort law. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In February 2019, Dietri Nakee Reliford was murdered by her ex-boyfriend, Kenneth Lee Harvey, in front of her children. The plaintiffs, acting on behalf of Reliford's estate and individually as her children, filed an action against the City of Americus, Georgia, alleging that before Reliford's murder, she and her family "made numerous attempts and requests of the Americus Police Department to protect" her from Harvey.

The first attempt occurred on December 7, 2018, when Harvey entered Reliford's home. After Harvey took Reliford's cell phone from her hand, refused to return it, and refused to leave her home, Reliford told her son to call the police. When police officers arrived, Reliford asked them to make Harvey leave, but the officers

told her they couldn't do so. When a police department supervisor asked Reliford and her landlord what they wanted him to do about Harvey, they asked to have Harvey barred from the property. The next morning, Reliford's landlord took out a criminal trespass notice against Harvey.

On January 11, 2019, Harvey returned to Reliford's home, again took her cell phone, refused to return it, and refused to leave. Reliford's daughter called her uncle, Reliford's brother, for help. When Reliford's brother arrived, Reliford used his cell phone to call the police for help. Reliford's brother pushed Harvey off Reliford, and Harvey left before the police showed up. When officers arrived, they "again advised Reliford that they could not do anything to restrain Harvey or to keep him from coming to her home."

Less than a week later, on January 17, 2019, Reliford and her children were awakened by the sound of gunshots outside their home. On January 22, 2019, security cameras identified Harvey on the premises of Reliford's home between 6:15 and 7:00 a.m. On the morning of February 1, 2019, two of Reliford's children were boarding the school bus when they saw Harvey pull into their driveway and block their mother's car. When the bus driver wouldn't let the children off the bus, Reliford's son borrowed a classmate's cell phone and called his mother. He heard Reliford screaming at Harvey to let her phone go. Reliford told her son to call the police because Harvey refused to leave her home. Officers arrived at Reliford's home but told her "that they could not make Harvey leave." That afternoon, Reliford went to her landlord, who

called the police again.  Reliford told an officer that Harvey had entered her residence, physically blocked her car from leaving, taken her cell phone, and again refused to return it.  Although Harvey had been issued a trespass notice in December 2018, the police didn't arrest Harvey, remove him from Reliford's home, or protect her.  Reliford filed a police report and, with help from her landlord, started the process of obtaining a restraining order against Harvey.

On February 8, 2019, Reliford was leaving for work when Harvey showed up at her home with a gun.  Harvey opened her car door, "declared that it was over," and shot Reliford.  Reliford later died from the gunshot wound.  After Reliford's death, the plaintiffs filed their complaint in the Middle District of Georgia.

The plaintiffs' complaint raised claims against the city under federal and state law.  The plaintiffs claimed that the city's failure to protect their mother from her ex-boyfriend violated Reliford's due process rights under section 1983 and was negligent under Georgia tort law.  The city moved to dismiss for failure to state a claim.

The district court granted the city's motion to dismiss.  The district court concluded that government entities can't be held liable under section 1983 based on their failure to protect individuals from harm by private actors.  The district court declined to exercise supplemental jurisdiction over the plaintiffs' state law claims and dismissed the plaintiffs' complaint without prejudice.  The plaintiffs timely appealed.

## STANDARD OF REVIEW

We review de novo a district court's dismissal of a complaint for failure to state a claim. *See Henderson v. McMurray*, 987 F.3d 997, 1001 (11th Cir. 2021). We review a district court's decision to decline to exercise supplemental jurisdiction over claims for abuse of discretion. *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 738, 743 (11th Cir. 2006).

## DISCUSSION

The plaintiffs argue that the district court erred by dismissing their section 1983 due process claim and by declining to exercise supplemental jurisdiction over their claims for personal injury and wrongful death under Georgia state law. We address each argument in turn.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o [s]tate shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The purpose of the Due Process Clause is to protect the people from the state, not to ensure that the state protect[s] the people from each other." *Wooten v. Campbell*, 49 F.3d 696, 700 (11th Cir. 1995). Consequently, "the Due Process Clause does not require the [s]tate to provide its citizens with particular protective services." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Thus, with limited exceptions, "a [s]tate's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197;

*see also Mitchell v. Duval Cnty. Sch. Bd.*, 107 F.3d 837, 838 (11th Cir. 1997) ("[A] person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties.").

The plaintiffs argue that the city deprived Reliford of her right to substantive due process because the police officers failed to remove Harvey from her home when he was engaged in a criminal act in their presence—namely, by trespassing in her home. This argument boils down to a claim that the city is liable for Reliford's death under a theory of respondeat superior. Our law on this issue is well settled:

> The Supreme Court has placed strict limitations on municipal liability under section 1983. There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers . . . . Instead, a municipality may be held liable for the actions of a police officer only when municipal official policy causes a constitutional violation. [A plaintiff] must identify a municipal policy or custom that caused his injury[.] It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under [section] 1983.

*Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (cleaned up). Accordingly, for the plaintiffs' claim to survive, they must identify a specific policy or custom that caused Reliford's death.

22-11398               Opinion of the Court               7

But they haven't done so.  Instead, their claim rests on a conclusory allegation that the city "apparently had a custom or policy not to intervene in cases of domestic violence."  This is insufficient.

But even if the plaintiffs could identify such a policy, their due process argument fails because they don't allege facts sufficient to support any of the limited exceptions to the general rule that failure to protect against private violence doesn't constitute a violation of due process.  Specifically, the plaintiffs fail to allege that Reliford had the sort of special relationship with the city that would create liability for the city or that the city's conduct rose to the level required to state a claim for deprivation of substantive due process.

Municipal governments may "be held liable for substantive due process violations for their failure to protect victims from harm caused by third parties where the state had a 'special relationship' with the victim." *White v. Lemacks*, 183 F.3d 1253, 1256 (11th Cir. 1999).  The plaintiffs identify no such relationship between Reliford and the city.  Instead, they imply that the officers' mere presence in Reliford's home when Harvey was there, coupled with knowledge that he intended her harm, gave rise to the sort of relationship that would trigger liability.  Again, this is insufficient.

Outside the custodial context, "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003).  "Acts intended to injure in some way unjustifiable by any government interest are most likely

to rise to the conscience-shocking level." *Id.* (quotations omitted). The plaintiffs do not allege that the city intended to harm Reliford. Instead, they allege only that the officers acted with "deliberate indifference" toward her. But we've never held that "deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." *Waldron v. Spicher*, 954 F.3d 1297, 1309 (11th Cir. 2020). Because this argument fails as well, the district court properly dismissed the plaintiffs' claim under section 1983.

This leaves us with the plaintiffs' state law claims. Although the district court had supplemental jurisdiction to hear the plaintiffs' state law claims related to their section 1983 due process claim, it had discretion to "decline to exercise supplemental jurisdiction over a claim" if it had "dismissed all claims over which it ha[d] original jurisdiction." 28 U.S.C. § 1367(c). We've said that when a district court decides not to exercise supplemental jurisdiction because only state claims remain, the proper action is dismissal without prejudice so that the complaining party may pursue the claim in state court. *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999). This is exactly what the district court did here. Upon determining that the plaintiffs' federal claim couldn't survive and concluding that the plaintiffs wouldn't be prejudiced because the statute of limitations would be tolled upon dismissal, the district court dismissed their claims without prejudice. The district court thus didn't abuse its discretion.

**AFFIRMED.**